UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JIAN LIN a/k/a Remus Lin,

                Petitioner,       **REPORT AND RECOMMENDATION**

       - against -

                                   05 Civ 2707 (PKC) (RLE)

BRIAN FISCHER,

                Respondent.

**To the HONORABLE P. KEVIN CASTEL, U.S.D.J.:**

## I. INTRODUCTION

*Pro se* petitioner, Jian Lin ("Lin"), a New York state prisoner at Sing Sing Correctional Facility, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 which was received by the *Pro Se* Office in this District on February 22, 2005. Lin was convicted of three counts of kidnapping in the first degree (N.Y. Penal Law §§ 135.25(1), (2)(a), (2)(b)), and sentenced to three concurrent indeterminate terms of twenty-five years to life in prison.

Lin contends that his incarceration violates the United States Constitution in that he was denied effective assistance of counsel because his trial counsel failed to: (1) communicate or discuss with him the evidence, possible defenses, or plea offers; (2) investigate several potential defense witnesses; and (3) otherwise sufficiently prepare for trial. Petition under 28 U.S.C. § 2254 ("Pet.") at 4. For the reasons set forth below, I recommend that the petition be **DENIED**.

## II. BACKGROUND

### A. Factual Background

In the spring of 1998, Yu Xiao Ming ("Ming") was introduced to Lin by his cousin Tiffany Liu ("Liu") and her then boyfriend. *See* Trial Transcript, June 12, 2000 ("6/12 Tr."), at

6. When they met, Ming was fourteen years old and Lin was twenty-three. **Id**. at 3, 7. Ming and Lin started spending time together and speaking on the phone on a regular basis. **Id**. at 7. Ming and Lin would also hang out with co-defendant Ding Wei Zeng a/k/a Kobe ("Kobe"), who Ming was friends with through school. **Id**. On July 20, 1998, Ming, Lin, and Kobe were hanging out together. **Id**. at 9. Ming suggested to Lin and Kobe that they play Mah Jong, a card game, and bet $10 per hand. **Id**. When they were done playing, Lin told Ming that Ming owed him $3000, and said he had to sign an IOU promising to pay the money back. **Id**. at 12-14. Ming signed the IOU, which stated that the $3000 was due in full within one month. **Id**. at 14. In early October 1998, Lin asked Kobe, Kwong Chan ("Chan"), who also owed money to Lin, and a youth named Tommy, who was a friend of Chan's, to kidnap Ming for him. **Id**. at 208-09, 213. Lin told the three boys to kidnap Ming from his school, take him to Kobe's apartment, and then call Lin to let him know they had Ming. **Id**. at 209-10. On October 13, 1998, Kobe, Chan, and Tommy went to Ming's school at approximately 2:55 p.m., and took him to Kobe's apartment. **Id**. at 216-17. When they got to Kobe's apartment, Kobe telephoned Lin. **Id**. at 31. After Kobe's call to Lin, Ming tried to leave, but Kobe told him he was not allowed to leave until he paid the money he owed. **Id**. at 35. Approximately two hours later, Kobe and the others left Ming alone in a room, and he was able to call his uncle to tell him he had been kidnapped. **Id**. at 36-37.

      While Kobe and the others were holding Ming at the apartment, Kobe took Ming into a room and beat him for about five to ten minutes. **Id**. at 38. Two to three hours later, Lin arrived with an unidentified girl. **Id**. at 39. Lin asked Ming if "the matter had been taken care of," and Ming said "No." **Id**. Lin slapped Ming across the face, and the girl hit Ming in the stomach. **Id**. at 39-40. Then, Lin beat Ming, and the girl cut Ming on the neck with a pair of scissors. **Id**. at

40. Lin left shortly after beating Ming, but the others held Ming overnight in the apartment. **Id**. at 41-43. The following day, Ming's father contacted the police to report that his son had been kidnapped. Trial Transcript, June 19, 2000 ("6/19 Tr."), at 12. The responding officers set up a "trap and trace" to track phone calls to Ming's home phone. 6/12 Tr. at 410. That evening, Kobe took Ming to a pay phone and told him to call his father and ask for the money. **Id**. at 43-44. The call was traced to 8102 Fifth Avenue, and several police officers responded to the location. **Id**. at 391. The police arrived shortly after the trace was completed, and Kobe and the others were arrested. **Id**. Lin was arrested twelve days later. **Id**. at 331.

Daniel Ollen ("Ollen"), an 18-B attorney, was assigned to represent Lin sometime in late 1999 or early 2000. Declaration in Opposition to Petition For a Writ of Habeas Corpus ("Opp'n Pet."), Exh. C at 23. He took over the case from the attorney who had represented Lin at the arraignment. **Id**. Lin first raised the issue of Ollen's ineffectiveness at his sentencing hearing, where he was represented by a third counsel. *See* Sentencing Transcript October 5, 2000 ("S. Tr."), at 18-19. Then, on September 18, 2001, Lin filed a motion to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10. Opp'n Pet. at Exh. A. He claimed that Ollen had provided ineffective assistance of counsel in that he failed to: (1) "communicate or discuss the evidence and possible defenses with [him]"; and (2) investigate "several potential defense witnesses." **Id**. Lin claimed that Ollen did not visit him in jail, respond to his letter, or accept his phone calls. **Id**. He acknowledged that he saw Ollen at his court appearances and that they were able to speak in the holding pen in the courtroom, but claimed that this provided no privacy. **Id**. Lin also asserted that Ollen would not speak to him about the case or potential defenses, but instead just told Lin he should plead guilty. **Id**. According to Lin, Ollen also

3

refused to pursue any of the exculpatory witnesses suggested by Lin.  **Id**.

On February 5, 2002, Judge Corriero held a hearing to address Lin's motion.  Opp'n Pet., Exh. C at 1.  At the hearing, Ollen testified that he had been a criminal trial lawyer for twenty years, and that he had handled more than 1000 criminal cases.  **Id**. at 15, 41.  In preparation for the case, Ollen said that he spoke with Lin's previous lawyer twice, viewed videotaped statements by the co-defendants in which they implicated Lin, and conferred with the prosecutor about what evidence the people would present in their case.  **Id**. at 23-24, 44-45, 50-52.  Contrary to Lin's representations, Ollen testified that he had discussed the case in person with Lin "easily ten" times prior to trial.  **Id**. at 27.  Ollen said he explained the plea offer to Lin and advised him to take it since his chances of prevailing at trial "were almost zero," but Lin decided to reject the plea offer.  **Id**. at 28-29, 37-38, 42-43, 65-66, 79-80.  Ollen testified that Lin had wanted him to call Liu and some of Lin's co-defendants as witnesses, but that he had declined because he did not think it would help Lin's defense.  **Id**. at 29-34.  After talking to Liu at least 25 times, Ollen decided that she would be "useless as a witness" because she was in a complete fog and did not remember anything relevant to the defense.  **Id**. at 31-37.  As for Lin's co-defendants, Ollen testified that calling any of them as witnesses in Lin's defense would be "malpractice" because "every witness had given statements to the police, videotaped, that implicated . . . Lin."  **Id**. at 50.  At the end of the hearing, Judge Corriero denied Lin's motion to vacate the verdict, finding that Ollen "adequately, if not more than adequately, represented [Lin]."  **Id**. at 139.

**B.     Procedural Background**

Lin appealed his conviction, which was affirmed by the Appellate Division on November

13, 2003.  **People v. Lin**, 766 N.Y.S.2d 845 (App. Div. 1st Dep't 2003).  On appeal, he raised the same ineffective assistance of counsel claim raised in the instant habeas petition.  *See* Opp'n Pet., Exh. F.  In rejecting his claim, the court found that "[t]he verdict was supported by legally sufficient evidence."  **Lin**, 766 N.Y.S.2d at 845-46.  The court also found that, "[t]he record establishes that [petitioner] received effective assistance of counsel . . . Counsel properly prepared for trial, provided appropriate advice concerning plea negotiations, and pursued a reasonable trial strategy."  **Id**.  Leave to appeal to the New York Court of Appeals was denied on February 25, 2004.  **People v. Lin**, 1 N.Y.3d 629 (2004).

### III. DISCUSSION

A. **Threshold Issues**

    1. **Timeliness**

A petitioner must file an application for a writ of habeas corpus within one year of his conviction becoming final.  *See* 28 U.S.C. § 2244(d)(1).  A conviction becomes final when the time to seek direct review in the United States Supreme Court by writ of certiorari expires, that is, ninety days after the final determination by the state court.  **Williams v. Artuz**, 237 F.3d 147, 150 (2d Cir. 2001).  Lin's conviction became final on May 25, 2004.  Lin's habeas petition was received in this Court's *Pro Se* Office on February 22, 2005, and it is therefore timely.

    2. **Exhaustion**

Generally, a federal court may not consider a petition for habeas corpus unless the petitioner has exhausted all state judicial remedies.  *See* 28 U.S.C. § 2254(b)(1)(A).  The

exhaustion doctrine requires a habeas petitioner challenging a state conviction on federal grounds to have presented his or her claims to the state courts first.  *See* **Daye v. Attorney Gen. of N. Y.**, 696 F.2d 186, 191 (2d Cir. 1982) (**en banc**), *cert. denied*, 464 U.S. 1048 (1984).  The claim must not only be presented to the state courts, but the state courts must have notice of the federal nature of the petitioner's claim.  **Id**. at 191.  A petitioner may give such notice by:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

**Id**. at 194.  Lin's claim of ineffective assistance of counsel was presented to the state courts on direct appeal.  The federal nature of his claim was asserted in sufficient terms to "call to mind" the protections of the United States Constitution.  **Id**.  Therefore, his claim has been exhausted.

**B.**     **Merits of Lin's Claims**

    **1.**     **Standard of Review**

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) constrains a federal habeas court's ability to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  The Act limits issuance of the writ to circumstances in which the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); *see* **Williams v. Taylor**, 529 U.S. 362, 412 (2000).  A state court decision involves an "unreasonable application" of Supreme Court precedent when the state court either "identifies the correct governing legal rule from [the

Supreme] Court's cases but unreasonably applies it to the facts" of the case, or "unreasonably extends a legal principle from [the Court's] precedent to a new context where it should apply." **Id**. at 407. "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous;" rather, it must be "objectively unreasonable." **Lockyer v. Andrade**, 538 U.S. 63, 75 (2003). A state court decision is contrary to federal law if the state court applies "a conclusion opposite to that reached by [the Supreme] Court on a question of law or if [it] decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." **Williams**, 529 U.S. at 413. Furthermore, in cases where the state court decision rests on a factual determination, the federal court must find that the "decision . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

    2.    **Merits of the Ineffective Assistance Claim**

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." **Strickland v. Washington**, 466 U.S. 668, 686 (1984). To prevail on an ineffective assistance of counsel claim, a petitioner must show that his counsel supplied deficient representation and that the petitioner suffered prejudice as a result of that deficient performance. **Id**. at 687. Under the first prong, counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." **Id**. at 690. "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial

strategy." **Id**. at 689 (internal quotations omitted). In this regard, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." **Id**. at 690. As to the second prong, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." **Id**. at 694. Although **Strickland** sets forth two prongs, a reviewing court need not address both. Instead, where the court can "dispose of an ineffective claim on the ground of lack of sufficient prejudice," the court should do so. **Id**. at 697. Here, petitioner has failed to demonstrate either that his counsel provided ineffective assistance, or that he was prejudiced therefrom.

Lin alleges that counsel failed to communicate or discuss the evidence, possible defenses, or plea offers with him, and failed to investigate potential witnesses. This assertion is unsupported by the record. The trial court credited Ollen's testimony that he had numerous discussions with Lin which included the plea offer, and that Lin ignored the legal advice. The court also credited Ollen's testimony that he interviewed potential trial witnesses and concluded that they would not be helpful to the defense. Finally, the court credited Ollen's testimony that the co-defendants would have made bad witnesses because they had all made statements incriminating Lin. The court concluded that Ollen's representation of Lin was adequate. These findings are entitled to a presumption of correctness which Lin was required to rebut with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see* **Leslie v. Artuz**, 230 F.3d 25, 31 (2d Cir. 2000), *cert. denied*, 531 U.S. 1199 (2001). Lin has failed to meet his burden.

Lin also makes a variety of other allegations against Ollen in support of his ineffective assistance of counsel claim. He claims that Ollen did not provide him with copies of documents

or evidence, as he requested, Opp'n Pet., Exh. A, did not thoroughly explain the evidence against him, and did not give him a chance to review any of the video statements. Pet., Exh. D at 2. Lin alleges he constantly asked Ollen to file motions for him and even handed him motions he prepared, but Ollen did not file any of these motions and gave him no consideration whatsoever. **Id**. Lin also compiled a list of contradictory testimony by various "pivotal" witnesses who testified against him which he says Ollen did not take into consideration. **Id**. at 12. Lin has failed, however, to show that any of these alleged acts or ommissions by Ollen were anything more than strategic. "[A]ttorneys are entitled to a strong presumption of competence. The reasonableness of the attorney's actions must be judged to the extent possible without the distorting effects of hindsight . . . and actions or omissions that might be regarded as sound trial strategy do not amount to ineffective assistance." **Polanco v. United States**, 2000 WL 1072303, at *9 (S.D.N.Y. Aug. 3, 2000) (internal citations and quotations omitted) (claim that attorney failed to file pretrial motions was procedurally defaulted but otherwise meritless).

There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." **Strickland**, 466 U.S. at 689. Lin's counsel provided adequate representation. He was aware of the facts of the case, investigated facts relevant to Lin's defense, informed Lin of the plea offer, and advised him as to whether he should accept the offer. Moreover, Lin has failed to demonstrate that the outcome would have been different but for the alleged deficiencies of counsel. Therefore, the state court's denial of Lin's ineffective assistance of counsel claim was neither "contrary to" nor an "unreasonable application" Supreme Court precedent. 28 U.S.C. § 2254(d)(1). Accordingly, Lin's ineffective assistance of counsel claim should be **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, I recommend that Lin's petition for a writ of habeas corpus be **DENIED.** Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable P. Kevin Castel, 500 Pearl Street, Room 2260, and to the chambers of the undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See* **Thomas v. Arn**, 474 U.S. 140, 150 (1985); **Small v. Sec'y of Health and Human Servs**, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(e).

**DATED: November 16, 2006**
**New York, New York**

Respectfully Submitted,

Ronald Ellis

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

**Copies of this Report and Recommendation were sent to:**
Petitioner
Jian Lin
00-A-5817
Sing-Sing Correctional Facility
354 Hunter St.
Ossining, NY 10562

10

<u>Counsel for Respondent</u>
Luke Martland
Ashlyn Dannelly
Assistant Attorneys General
120 Broadway, 22nd floor
New York, New York 10271
(212) 416-8624